# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BANK OF OKLAHOMA, N.A., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 06-CV-543-GKF-PJC |
| RICHARD M. ARNOLD, SR.; RICHARD M. ARNOLD, II; T. CRAFT, INC.; CATTLEMAN'S EXCHANGE CREDIT UNION; ATLAS TITLE & ESCROW, INC.; THOMAS A. ENGLISH; THADDEUS T. MOCK; SUSAN V. ATHERTON; DOUGLAS A. JENNINGS; UNITED STATES OF AMERICA, | ) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court is the United States' Motion to Serve Subpoena by E-mail and Facsimile (Dkt. #65). The United States moves to serve a subpoena upon Glacier International Depository Bank ("Glacier"), purportedly a Connecticut financial institution, by e-mail and facsimile because the traditional methods of service have been ineffective.

In this interpleader suit, the parties seek a determination of the proper distribution of $264,200 in cash deposited with the plaintiff Bank of Oklahoma ("BOK") and now held by the Court Clerk. In the course of discovery, the United States cites the following unsuccessful attempts to serve a civil subpoena upon Glacier as attested to by Litigation Assistant, Joanna Duffin ("Duffin affidavit"), and Attorney Jacqueline Brown ("Brown affidavit").

The United States located Glacier's website which contains phone and fax numbers and an email address for Glacier as well as an address for Glacier's Southwest Regional Office in

Tucson, Arizona. *Duffin affidavit* ¶¶ 3-4. The United States first attempted service by process server at the Tucson address on October 22, 2007. *Id*. at ¶5, Ex. 5. Roger L. Scherrer was the only person at the location and he stated he only answers the phone; he had no authority to accept service and he had no knowledge of where to call or deliver the documents. *Id*. Then, on October 25, 2007, the United States emailed Glacier requesting its mailing address and Richard Stephens ("Stephens"), the identified Vice President of Glacier, responded the next day stating that Glacier is "a financial institution owned by the Sovereign Blackfeet Nation and as such any formal request for information must be processed via the Department of the Interior and the Blackfeet Tribal Council." *Id*. at ¶¶ 6-7, Ex. 3. The United States emailed Stephens back requesting that he accept service by facsimile; Stephens refused but stated that Glacier would be "happy to assist with any reasonable request" and to forward a letter listing the requested information. *Id*. at ¶¶8-9, Ex. 4. The United States also contacted representatives from the Sovereign Blackfeet Nation, headquartered in Montana, who confirmed that the bank was originally founded by Robert Doore ("Doore"), a tribal member in Browning, Montana, but that the Blackfeet Tribal Business Council had no current relationship or affiliation with Glacier or its Chairman. *Brown affidavit* ¶¶3-4, Ex. 7. Doore sent the United States Blackfeet Tribal Resolution No. 286-2007 which states that the Blackfeet Tribal Business Council had chartered "Glacier International Depository, Ltd." in April 2005 as a "tribally chartered for-profit corporation owned by Robert "Smokey" Doore, Sr., an enrolled member of the Blackfeet Tribe," but that the Council no longer had any relationship with Glacier International Depository, Ltd., nor had it ever had any relationship with Glacier or GIDBank, a nonexistent company purportedly operated by Louis Roman, a non-Indian of Bridgeport, Connecticut. *Id*. at ¶4, Ex. 7.

The United States attempted to serve a subpoena at the last known address for Louis Roman in Bridgeport, Connecticut but was told by a person refusing to open the door that Louis Roman no longer lived there. *Id.* at ¶5. The process server then conducted a postal trace which indicated that Louis Roman had not requested any address change from the address where the process server first attempted service. *Id.* at ¶6, Ex. 8. Finally, the United States contacted the Connecticut Department of Banking and the Montana Division of Banking and Financial Institutions where the representatives were unable to find any listing or information for Glacier. *Id.* at ¶¶ 7-8.

Based on the above unsuccessful attempts and Glacier's refusal to cooperate, the United States now seeks leave to allow service of Glacier by email and facsimile.

Rule 45(b)(1) provides in pertinent part that "[s]erving a subpoena requires delivering a copy to the named person." Fed.R.Civ.P. 45(b)(1). Wright & Miller explain that the "longstanding interpretation of Rule 45 has been that personal service of subpoenas is required," based on the literal construction of the word "delivering" in the rule:

> The use of the word "delivering" in subdivision (b)(1) of the rule with reference to the person to be served has been construed literally. Under this construction, contrary to the practice with regard to the service of a summons and complaint, it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness. Moreover, unlike service of most litigation papers after the summons and complaint, service on a person's lawyer will not suffice.

9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure §2454 (2d ed. 2007); *see e.g., Briarpatch Ltd., L.P. v. Geister Roberdeau, Inc.*, 2006 WL 1311967 (S.D.N.Y. 2006); *Chima v. U.S. Dept. of Defense*, 23 Fed Appx. 721, 724 (9th Cir. 2001) (District court did not erred in refusing to compel defense witnesses to comply with subpoenas served by mail rather than personal service.); *Agran v. City of New York*, 1997 WL 107452, at *1 (S.D.N.Y. March 11,

1997) (holding that the court was without authority to sanction service of a subpoena by mail); *F.T.C. v. Compagnie e Saint-Gobain-Pont-A-Mousson*, 636 F.2d 1300, 1312-13 (D.C.Cir. 1980) ("[C]ompulsory process [under Rule 45] may be served upon an unwilling witness only in person.").

Wright & Miller also note, however, an "emerging minority position" that "service of a subpoena under Rule 45 [is] proper absent personal service." Wright & Miller, §2454; *see, e.g., Ice Corp. v. Hamilton Sundstrand Corp.*, 2007 WL 1364984, at *3 (D. Kan. May 9, 2007) (The language of Rule 45 "neither requires in-hand service nor prohibits alternative means of service."); *Ultradent Prods., Inc. v. Hayman*, 2002 WL 31119425, at *3-4 (S.D.N.Y. Sept. 24, 2002) (holding that service of subpoena by certified mail was sufficient under FRCP 45(b)(1), which merely requires "deliver[y]"); *Cohen v. Doyaga*, 2001 WL 257828, at *3 (E.D.N.Y. Mar. 9, 2001) (permitting service of a subpoena by mail because "[p]ersonal service of a subpoena on a non-party in a bankruptcy proceeding is not required, and may be accomplished in a manner 'reasonably calculated to give the non-party notice of the proceedings and an opportunity to be heard'"); *Cordius Trust v. Kummerfeld*, 2000 WL 10268, at *1-2 (S.D.N.Y. Jan. 3, 2000) (holding that certified mail was sufficient to serve a non-party with subpoena, especially in light of repeated attempts at service); *King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 (E.D.N.Y. 1997) (Service under Rule 45 requires only that "service is made in a manner that reasonably insures actual receipt of the subpoena by the witness.").

The rationale for this minority view is that the language of Rule 45(b)(1) is ambiguous and should be considered in context of Rule 45 as well as other federal rules. For instance, Rule 45(b)(3) provides:

4

> Proving service, when necessary, requires filing with the issuing court a statement showing the date and *manner of service* and of the names of the persons served. The statement must be certified by the server.

Fed.R.Civ.P. 45(b)(4) (emphasis added). Reading Rule 45(b)(1) as allowing only personal service of the subpoena would render the statement regarding the "manner of service" superfluous. *See, e.g., Western Resources, Inc. v. Union Pacific Railroad Co.,* 2002 WL 1822432 at *2 (D.Kan. July 23, 2002). Further, if such were the reading, the language of Rule 4(e)(2)(A) requiring that "delivering" a copy of the summons and complaint be done "personally" would be pure surplusage. *Id.* Finally, Rule 1 of the Federal Rules of Civil Procedure which requires courts to "secure the just, speedy, and inexpensive determination of every action and proceeding" supports a less restrictive reading of "delivering" in Rule 45(b)(1). Fed.R.Civ.P. 1. Thus, these courts reason, reading "delivering" in light of these federal rules militates against restricting that delivery to personal service.

While the Court certainly appreciates the United States' frustration in effecting its subpoena on Glacier, the Court declines the government's invitation to interpret Rule 45(b)(1) so broadly as to allow service of a subpoena by email or facsimile in this case. Even if the Court agreed that Rule 45 does not restrict the manner of service of a subpoena to personal service, the cases so holding have limited alternative service to that permitted under Rule 4 and have not extended it to email or facsimile. Further, although Rule 45 was amended in 2001, 2005, 2006 and most recently December 1, 2007, when most of these "minority" decisions were handed down, the revisors did not expand the methods of service. *See* David D. Siegel, *Practice Commentaries*, 28 U.S.C.A. Fed.R.Civ.P. 45, cmt. C45-9 (West Supp. 2007) ("An effort by the revisors to expand the methods of service, at least in designated circumstances, would have been

5

welcome. It was not to be however, and personal delivery remains the sole method prescribed [under Rule 45(b)]."). Finally, the United States has not shown that it cannot serve Louis Roman personally as it has his last known address and there is no change of address on file indicating that he has moved.

For the reasons stated above, the Court denies the United States' Motion to Serve Subpoena by E-Mail and Facsimile (Dkt. #65).

IT IS SO ORDERED, this 20th day of February, 2008.

_____
Paul J. Cleary
United States Magistrate Judge